UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAED HAMMAD, | ) | CIVIL ACTION NO. 4:20-CV-568 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Saed Hammad ("Plaintiff"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 14). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this opinion is amended to reflect this change.

portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, for the reasons explained herein, the Commissioner's final decision will be VACATED and this case will be REMANDED for further proceedings.

II.     BACKGROUND & PROCEDURAL HISTORY

On November 22, 2016, Plaintiff protectively filed an an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 21). In this application, Plaintiff alleged he became disabled as of February 23, 2015, when he was forty-five (45) years old, due to the following conditions: severe depression, post-traumatic stress disorder ("PTSD"), anxiety and memory loss. (Admin. Tr. 82-83, 184). Plaintiff alleges that the combination of these conditions affects his ability to concentrate, memorize, understand, complete tasks, follow instructions, and get along with others. (Admin. Tr. 216). Plaintiff completed 2 years of college in 1989. (Admin. Tr. 58, 184). Before the onset of his impairments, Plaintiff worked as a soccer coach from 2001-2010. (Admin. Tr. 58). From 2010 through 2013 Plaintiff worked as a soldier in the United States Army with an MOS of gun mechanic and interpreter. *Id*. Following discharge from the U.S. Army Plaintiff worked from January of 2014 through December of 2014 as a laborer in a

flooring company. (Admin. Tr. 59). Plaintiff worked briefly as a deli slicer in a grocery store both before and after his date of alleged onset. (Admin. Tr. 59-60).

On May 26, 2017, Plaintiff's application was denied at the initial level of administrative review. (Admin Tr. 98-102). On June 1, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 105-106) . On July 30, 2017, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Mike Oleyar (the "ALJ"). (Admin. Tr. 21). On December 27, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 21-32). On February 21, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 156-158)

On February 12, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1-7). On April 4, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the Court reverse the decision at the administrative level, and award a period of Disability and Disability Insurance Benefits based on his disability with an onset date of February 23, 2015, and continuing without cessation to the present. (Doc. 1).

In the alternative, Plaintiff requests that this case be remanded to the Commissioner for a new hearing on the question of whether the Plaintiff's medical condition renders him disabled.  Plaintiff further requests that the Court grant such relief as it deems justified, including, but not limited to, the award of attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. (Doc. 1).

On October 13, 2020, the Commissioner filed an Answer. (Doc. 11). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 11). Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 15), the Commissioner's Brief (Doc. 16), and Plaintiff's Reply (Doc. 19) have been filed. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200

(3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417,

2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

    B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on December 27, 2018.

previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's

medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which

Page 8 of 30

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following arguments in his statement of errors:

(1)  The ALJ failed to assign significant weight to the assessment of the consultative psychologist for erroneous reasons;

(2) The ALJ erroneously rejected the opinion of the consultative psychologist based solely on his lay opinion and without support from any medical opinion of record;

(3) The ALJ failed to assign significant weight to the disability determination of the Veterans Administration without good reasons, and failed to address the opinion of the VA psychologist on which the disability rating was based; and

(4)  The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the VE.

(Doc. 15, p. 3).

A.    THE ALJ's DECISION DENYING PLAINTIFF's APPLICATION

In his December 2018 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 23, 2015. (Admin. Tr. 19). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: adjustment disorder, PTSD, Insomnia, and dupuytren of the left hand. (Admin. Tr.

Page 9 of 30

24). The ALJ additionally found that Plaintiff had the following non-severe conditions: GERD, allergic rhinitis, deviated nasal septum, sub conjunctival hemorrhage of the right eye, and functional bowel disease. *Id*. At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 24-26).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in a less than full range of medium work as defined in 20 C.F.R. § 404.1567(c) except that:

> the claimant is limited to frequent handling and fingering with his left arm. The claimant is limited to performing simple and routine tasks, but not at a production rate pace (assembly line work) with occasional changes in the work setting. He is limited to occasional interaction with involving only simple, work-related decisions, and with few, if any, work place changes. The claimant is limited to only occasional interaction with supervisors, coworkers, and never public interaction.

(Admin. Tr. 26).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 30). At step five, the ALJ found that, considering Plaintiff's age, education, and work experience, Plaintiff could engage in other work that existed in the national economy. *Id.* To support his conclusion, the ALJ relied on testimony given by a vocational expert during

Plaintiff's administrative hearing and cited the following three (3) representative occupations: labor salvage worker, DOT #929.687-022; linen room attendant, DOT #222.387-030; industrial cleaner, DOT #381.687-018. (Admin. Tr. 30-31).

B.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINIONS OF RECORD

In first three issues raised in his statement of errors, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence in this case.

On May 26, 2017, the case was reviewed at the state agency level by Linda Lease, Ph.D. (Admin. Tr. 84-86). It was the statement of Dr. Lease that there was insufficient evidence in the file to make a determination as to the B criteria, that there was insufficient evidence in the file to make a determination as to the C criteria and that overall there was insufficient evidence to evaluate the claim. (Admin. Tr. 85-86). The ALJ noted that the DDS opinions were rendered by physicians who had insufficient evidence at the time of their analysis. (Admin. Tr. 20-30). The ALJ thus noted that the opinions were "accorded limited probative weight". (Admin. Tr. 30).

On May 18, 2016, Psychologist Theodore Nnaji ("Dr. Nnaji") completed a "Disability Benefits Questionnaire" for use by Veterans Affairs. (Admin. Tr. 284-290). In that questionnaire, Dr. Nnaji diagnosed Plaintiff with adjustment disorder

with depressed mood. (Admin. Tr. 285). Dr. Nnaji summarized Plaintiff's level of

occupational and social impairment as follows:

> Occupational and social impairment with occasional decrease in work
> efficiency and intermittent periods of inability to perform occupational
> tasks, although generally functioning satisfactorily, with normal
> behavior, self-care and conversation.

(Admin. Tr. 285).

The ALJ did not recognize Dr. Nnaji's 2016 questionnaire as a medical

opinion. The only citation to this opinion appears in a summary of Plaintiff's

treatment history, where the ALJ observes that:

> [Plaintiff's] diagnosis had been Adjustment Disorder with Depressed
> Mood (1F at 25). In May 2016, they claimant was reporting flashbacks
> and nightmares of incoming rockets and war; however, he admitted that
> the medication was helping him sleep, but not properly. He was also
> reporting anger and irritability episodes after returning from his
> deployment (1F at 27).

(Admin. Tr. 27).

On August 20, 2018, Jennifer Betts, Psy. D. ("Dr. Betts") examined Plaintiff

at the request of the Social Security Administration. After the examination, Dr. Betts

wrote a narrative report explaining her findings, and completed a check box /fill-in-

the-blank medical source statement about Plaintiff's ability to do mental work-

related tasks. (Admin. Tr. 424-431). In her narrative report, Dr. Betts diagnosed

Plaintiff with posttraumatic stress disorder, moderate to severe. (Admin. Tr. 427).

In her medical source statement, Dr. Betts was asked to rate Plaintiff's ability to perform certain work-related tasks based on the following scale: none (able to function independently, appropriately, effectively, and on a sustained basis); mild (slightly limited ability to function independently, appropriately, effectively and on a sustained basis); moderate (fair ability to function independently, appropriately, effectively, and on a sustained basis); marked (seriously limited ability to function independently, appropriately, effectively, and on a sustained basis); and extreme (unable to function in this area independently, appropriately, effectively, and on a sustained basis). (Admin. Tr. 429). Dr. Betts assessed that Plaintiff had "marked" limitations in one area: responding appropriately to usual work situations and to changes in a routine work setting. Dr. Betts did not explain the basis for this limitation on the medical source statement form.

In his decision, the ALJ generally gave "great" weight to Dr. Betts' opinion, but discounted the one marked limitation. In doing so, the ALJ explained:

> This doctor opined the claimant had only mild or moderate limitations in mental functioning, and would be able to perform simple tasks with occasional social interaction but would have "marked" limitation in his ability to respond appropriately to usual work situations and changes in a routine work setting (4F at 9). This opinion is accorded great weight, regarding the claimant's functioning; however, the mental status exam does not support the "marked" limitation in adapting.

(Admin. Tr. 29).

Page 13 of 30

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence.  20 C.F.R. § 404.1527(b).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is

consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

1.      Whether the ALJ Properly Evaluated Dr. Betts' Opinion

In the first and second arguments in his statement of errors, Plaintiff argues that the ALJ improperly evaluated the opinion of Dr. Betts. Plaintiff argues that Dr. Betts' opinion was improperly discounted for two reasons. First, he argues that the ALJ improperly relied on his own lay opinion to discount Dr. Betts' assessment that Plaintiff would have a "marked" difficulty adjusting to changes in routine. Second, he argues that the ALJ incorrectly concluded that Dr. Betts' "mental status exam"

did not support a marked limitation adjusting to changes in routine. Last, Plaintiff contends that remand is the appropriate remedy for this error because, if Dr. Betts' opinion had been credited, Plaintiff would have been found disabled.

In response, the Commissioner argues that the ALJ's rejection of the "marked" limitation is supported by both Dr. Betts' mental status examination and by other evidence cited by the ALJ in his decision. (Doc. 16, pp. 12-13). The Commissioner addresses Plaintiff's "lay opinion" argument by asserting that the regulations "do not mandate that a medical opinion received controlling or significant weight in order to reach the factual finding of a claimant's work capacity." (Doc. 16, p. 15).

Beginning with Plaintiff's first argument, regarding an ALJ's improper reliance on his or her own lay opinion to reject the opinion of a medical expert, Plaintiff is correct that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Furthermore, an ALJ "may not make 'speculative inferences from medical reports'" and may reject an opinion outright "'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation, or lay opinion." *Morales*, 225 F.3d at 317. However, I am not persuaded that the ALJ in this case substituted his

own judgment without relying on other medical evidence or authority. The ALJ relied on Dr. Betts' own mental status examination to discount the marked limitation. Thus, I cannot conclude that the rejection of this limitation was based on the ALJ's own lay opinion. Instead, it appears to be based on other medical evidence—namely, Dr. Betts' mental status examination. The question of whether that mental status examination supports the ALJ's conclusion is another matter.

The ALJ concluded that the "marked" limitation in responding appropriately to workplace changes was not credible because it was not supported by the above-quoted mental status examination. Reviewing the relevant portions of the ALJ's decision and Dr. Betts' narrative report, I agree with Plaintiff that the ALJ's rejection of the marked limitation in responding appropriately to workplace changes is not supported by substantial evidence.

Dr. Betts' medical source statement is the only opinion evidence which was considered and analyzed by the ALJ, despite the presence of two other opinions in the record. The fact that this was the only medical opinion analyzed by the ALJ makes it all the more important that his analysis be a thoughtful and considered one. I find instead a vague finding that gives no detail as to what the ALJ's finding was based on. The simple statement that the finding of marked limitations is not supported by the mental status examination does not explain in any detail what

finding on the mental status examination was inconsistent with the opinion. As the Plaintiff noted in his argument, the mental status examination performed by Dr. Betts included a finding that Plaintiff exhibited abnormal motor behavior and stuttering secondary to anxiety. There was no attempt to reconcile the fact that those findings were consistent with said limitation. (Doc. 15, p. 6-7).

The Commissioner argues that contrary to Plaintiff's assertion, the ALJ considered all factors set forth in 20 C.F.R. 404.1527(c). (Doc. 16, p. 12). He does not give any indication, however, when or where those considerations are reflected in the decision. *Id*.

In his opposition argument, the Commissioner argues that the ALJ in the decision pointed out other evidence that was inconsistent with a marked limitation, such as infrequent treatment with a VA psychiatrist, the fact that Plaintiff has not been hospitalized, and the fact that Plaintiff is able to live alone. (Doc. 16, p. 13). The Commissioner notes that Plaintiff's participation in a VA work therapy program was considered by the ALJ and that it was inconsistent with Dr. Bett's opinion. *Id.* at 14.

Notwithstanding the fact that Plaintiff's participation in a sheltered workshop would need to be considered according to an entirely different standard than that of work available in the general economy, none of the explanations given now by the

Commissioner were stated in the ALJ's decision. The sole reason stated by the ALJ for giving limited weight to Dr. Betts' opinions regarding a marked limitation in adapting was the fact that it was not supported by the mental status examination. (Admin. Tr. 29).

While it might be possible that the ALJ considered the factors set forth in the Commissioner's argument, the ALJ's decision contains no language which indicates that is the case. Moreover, the Commissioner can point to no such language and instead posits that because those factors were noted in the Plaintiff's history, we should assume they were considered by the ALJ and that he failed to properly cite them. This argument is error, as allowing the Commissioner to correct such omissions made by the ALJ after the fact is contrary to the rule of law.

> In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:
>
>> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the *145 administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court

> into the domain which Congress has set aside exclusively for the administrative agency.
>
> *Chenery Corp.,* 332 U.S. at 196, 67 S.Ct. 1575. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari,* 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart,* 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

*Hansford v. Astrue*, 805 F. Supp. 2d 140, 144–45 (W.D. Pa. 2011).

Here, the Court would be at a loss to ascertain the reasoning behind the ALJ's decision. Furthermore, remand is appropriate when an ALJ's decision contains language is so vague as to thwart the court in its duty to "properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence." *Solomon v. Colvin*, No. 12-1406-RGA-MPT, 2013 WL 5720302, at *12 (D. Del. Oct. 22, 2013). As the Third Circuit Court of Appeals has noted on this score*:*

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements ... are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In practice:

Page 20 of 30

We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

*Winters v. Saul*, No. 1:20-CV-316, 2021 WL 963472, at *5 (M.D. Pa. Mar. 15, 2021).

2.  Whether the ALJ Properly Evaluated Dr. Nnaji's Medical Opinion

In the third argument raised in the statement of errors, Plaintiff argues that remand is required because the ALJ did not properly analyze the opinion of Dr. Nnaji.

While the ALJ erred in the amount of weight given to portions of Dr. Betts' opinions, he erred also in failing to address the opinion of Dr. Nnaji in any meaningful way. Indeed, Dr. Nnaji is not even named in the decision. (Admin. Tr. 22-33). The ALJ noted summarily in the decision that Plaintiff "was noted as having 70% service connected disability for chronic adjustment disorder." (Admin. Tr. 28). He made no further remark regarding the underlying findings of the VA, other than to state that "the Social Security Administration uses different standards to determine disability." *Id.*

The Commissioner argues that while the ALJ did not address the opinion of Dr. Nnaji, he did in fact cite to two of the pages of Dr. Nnaji's report and therefore, it should be assumed that the ALJ considered the report. (Doc. 16, p. 22).

In response, I cite again to the rulings of *Cefalu v. Barnhart,* 387 F.Supp.2d 486, 491 (W. D. Pa. 2005) and *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144–45 (W.D. Pa. 2011). As noted, the Court's review is limited to the four corners of the ALJ's decision. In citing those pages the ALJ cited to a VA determination of 70% disability, nothing more and nothing less. (Admin. Tr. 27). It is not proper for the Court to assume that an ALJ properly considered a medical opinion, when nothing in the four corners of the decision would indicate that such is the case.

The present case was filed on November 22, 2016. (Admin. Tr. 21). As such, the appropriate regulation to be applied is 20 C.F.R. 404.1527(c), which provides:

> *How we weigh medical opinions.* Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

The Commissioner seemingly argues that Dr. Nnaji's opinion need not be considered because he evaluated Plaintiff for purposes of determining his eligibility for veterans benefits and the ALJ properly considered that the VA assessed a 70%

Page 22 of 30

disability rating. (Doc. 16, p. 21-22). He errs in that assertion, which is in clear conflict with the regulation.

> The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

*Winters*, 2021 WL 963472, at *7.

Dr. Nnaji was an acceptable medical source who examined Plaintiff and provided a detailed report which contained information obtained from examination of Plaintiff and review of both his medical and military files. (Admin. Tr. 284-290). The report contained important information including symptoms and behavioral observations noted in his mental status examination. (Admin. Tr. 289). While the Commissioner minimizes the significance of the report, noting that Dr. Nnaji "checked off language" in a box, this is not a valid characterization of the report in general. (Doc. 16, p. 22).

Even assuming that the report contained no more than boilerplate language, the report was rendered by an acceptable medical source and the ALJ would have

been required to consider it. The fact that it contained a number of narrative portions and relevant findings only compounds the ALJ's error.

The Commissioner also argues that it was harmless error for the ALJ not to consider the report. (Doc. 16, p. 22-23). Again, her argument misses the mark. First, the report contains much more information than a simple checked box, as argued by the Commissioner. Second, in assessing the weight of all medical opinions pursuant to 20 C.F.R. 404.1527(c), the ALJ is required to consider the consistency of each opinion with the record in general and those of other opinions.

It is true that Dr. Nnaji opined that Plaintiff had "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily". (Doc 16, p. 22) (citing Admin. Tr. at 27, 285, 287). But the report of Dr. Nnaji also included narrative passages which stated that Plaintiff reported having a temper, lacking patience and motivation and having been fired from positions. (Admin. Tr. 286). Dr. Nnaji noted that Plaintiff reported intrusive thoughts, anger outbursts and irritability. (Admin. Tr. 287). Dr. Nnaji noted that Plaintiff had depressive symptoms which included depressed mood, sadness, fatigue, insomnia, social isolation, and withdrawal; as well as anxiety symptoms which included restlessness, heart racing, sweating, shaking, feeling on edge and irritability. *Id*.

To the extent that such findings might be consistent with Dr. Betts' opinions and findings, it cannot be viewed as harmless error that the findings and opinions were not adequately addressed by the ALJ.

> Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. See *Plummer*, 186 F.3d at 429; *Cotter*, 642 F.2d at 705. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705. *Burnett v. Comm'r of Soc. Sec. Admin*., 220 F.3d 112, 121 (3d Cir. 2000). See *Riley v. Colvin*, No. 3:13-CV-1223, 2014 WL 4796602, at *7 (M.D. Pa. Sept. 26, 2014).

*Winters,* 2021 WL 963472, at *6.

In this record, there only existed two substantive medical opinions. By virtue of the fact that the ALJ was charged with considering the consistency of the opinions and underlying findings, he could not properly make a determination as to the weight of either opinion without considering the consistency of both. Because we cannot tell from the ALJ's language whether he considered Dr. Nnaji's opinions and findings, we are obliged to remand as to this issue.

C. WHETHER THE ALJ PROPERLY EVALUATED THE VA FINDING OF 70% SERVICE CONNECTED DISABILITY AND THE MEDICAL EVIDENCE UNDERLYING THAT DETERMINATION IN ACCORDANCE WITH 20 C.F.R. § 404.1504

In the medical records from Veteran's Affairs, Plaintiff is noted as having 70% service connected disability for chronic adjustment disorder. (Admin. Tr. 354,

377, 417). The written administrative decision from Veteran's Affairs is not in the record. However, the treatment records suggest that Plaintiff's disability was rated 70% as early as January 2017. (Admin. Tr. 354). In his decision, the ALJ noted that:

> On July 21, 2017, the claimant was noted as having 70% service connected disability for chronic adjustment disorder (3F at 40). The undersigned finds that the receipt of such benefits provide some insight into the severity of the claimant's impairments and how they affect his ability to function. However, the Social Security Administration uses different standards to determine disability.

(Admin. Tr. 28).

In the third argument raised in his statement of errors, Plaintiff asserts that the ALJ erroneously assigned little weight to the VA finding of a 70 percent service-connected disability. (Doc. 15, pp. 12-13). Plaintiff cites to the language of 20 C.F.R. 404.1504, as well as *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985) and *Fowler v. Califano*, 596 F. 2d 600, 603 (3d Cir. 1979). (Doc. 15, p. 13). Plaintiff notes that "if the ALJ reaches a contrary conclusion, the ALJ must offer an explanation of why he rejected the other agency's finding." *Id*.

The Commissioner argues in his brief that Plaintiff relied on SSR 06-3p which was rescinded in March 27, 2017 and no longer applies. (Doc. 16, p. 20). The Commissioner also argues that the ALJ fulfilled his duty to consider the VA rating by noting, "that the VA disability benefits can provide some insight into the severity

of the Plaintiff's impairments and functioning, the ALJ also recognized the potentially limited value in determining disability under the Act because of the VA's differing standard for determining disability." (Doc. 16, pp. 20-21).

In 2017, the regulation related to the consideration of opinions by other governmental agencies, like Veteran's Affairs, was amended. The new regulation applies to claims filed on or after March 27, 2017. Plaintiff's claim (i.e., his application) was filed on November 22, 2016. Therefore, the old version of 20 C.F.R. § 404.1504 applies in this case. This regulation provides that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

I am not persuaded by the Commissioner's position that the ALJ adequately explained his reasons in giving limited weight to the VA determination that Plaintiff was 70% disabled. Unfortunately, Plaintiff can take only cold comfort in that fact, as I cannot find the ALJ's failure to explain the weight given the VA rating was anything more than harmless error in this case.

The cases which Plaintiff cites are easily distinguished from the present case insofar as they all pertain to instances in which a Plaintiff had been assessed a 100% disability rating by the agency in question. In *Lewis v. Califano*, the ALJ had failed to consider the finding by a state agency physician that the Plaintiff "was unable to work." 616 F.2d. at 76. Plaintiff was not found by the government agency in question to "unable to work" or to be 100% disabled, unlike the prevailing litigants in those actions.

The record indicates that Plaintiff has a 70% service-connected disability rating, which would meet the threshold to be able to apply for 100% benefits pursuant to a finding of total disability individual unemployability ("TDIU"). The record does not reflect that Plaintiff has applied for TDIU, let alone been awarded a finding of individual employability.

The facts of this case are strikingly similar to those of *McCleary v. Colvin*, 187 F. Supp. 3d 497, 542–43 (M.D. Pa. 2016). In what he deemed a case of first impression, Judge Jones adopted the Report and Recommendation of Magistrate Judge Cohn, who found that "the Court finds that the ALJ committed no error in according little weight to the VA rating of 70 percent for PTSD." *McCleary*, 187 F. Supp. 3d at 543. In *McCleary*, the Court reasoned:

The Court finds that the ALJ committed no error in according little weight to the VA rating of 70 percent for PTSD. Even if the ALJ erred, such would be harmless and a remand would not alter the outcome of the case. *See e.g., Williams v. Barnhart,* 87 Fed. Appx. 240, 243–44 (3d Cir. 2004); *Napoli v. Colvin,* No. 3:13–CV–01815, 2014 WL 2808603, at *11 at n.23 (M.D. Pa. June 20, 2014) (finding harmless error harmless error under the totality of the evidence); *Bivins ex rel. N.B. v. Astrue,* No. 5:11–CV–51 MSH, 2011 WL 5859954, at *5 (M.D. Ga. Nov. 22, 2011) ("Considering the totality of the medical evidence.... A remand to have the ALJ perfect the record as to this statement would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources").

*Id.* at 542–43.

Like the Court in *McCleary*, I find that the ALJ committed no error under these circumstances in according little weight to the VA rating and that had he done so it would have amounted to harmless error. As the VA did not rate Plaintiff to be unable to work or to be 100% disabled, its rating of 70% disability would have little impact on an ultimate determination of disability pursuant to Social Security standards. Accordingly, I find in the Commissioner's favor as to that issue.

D.   WHETHER THE ALJ ERRED IN THE HYPOTHETICAL QUESTIONS ASKED TO THE VE

In submitting hypothetical questions to a vocational expert, a hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the vocational expert's answer to the question cannot be supported by substantial evidence. *Chrupcala v. Heckler*, 829

F.2d 1269, 1276 (3d Cir. 1987); *see also Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005).

Because I find that the ALJ erred in evaluating the opinion evidence in this

matter, there is a resulting conclusion that the limitations as stated to the VE in the

ALJ's hypothetical are in question.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff's request for remand is GRANTED

as follows:

(1)     The final decision of the Commissioner is VACATED.

(2)     This matter will be REMANDED to the Commissioner pursuant to
        sentence four of 42 U.S.C. § 405(g) for further proceedings consistent
        with this Opinion.

(3)     An appropriate order shall issue.


Date: July 27, 2021                    BY THE COURT

                                       *s/William I. Arbuckle*
                                       William I. Arbuckle
                                       U.S. Magistrate Judge